AUGUST LAU v. GEORGE N. FLETCHER ET AL.

*Master and servant—Negligence—Defective appliances—Expert testimony—Questions for jury.*

1. In an action by an employé for injuries received by the breaking of a saw, it is competent for witnesses who are shown to be familiar with such saws, and who have had large experience in their use, and know their strength, and the force to which they are subjected, to testify that in their judgment the saw in question was suitable and safe for use.

2. The testimony on the part of the defendant tended to show that the plaintiff was not struck by a piece of the saw, as claimed by him, and that the saw, which had been mended, was suitable and safe for the use to 'which it was applied. And it is held that the court properly refused to direct a verdict for the plaintiff, leaving to the jury only the question of damages.

Error to Alpena. (Kelley, J.) Argued February 13, 1895. Decided March 5, 1895.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*J. D. Turnbull* (*W. E. Depew,* of counsel), for appellant.

*Frank Emerick,* for defendants.

GRANT, J. The defendants own and operate a pulp mill. One of the machines used is called the "double cutter," consisting of a frame or table 4 feet high, 9 feet long, and 4 feet wide, the saw, the carriage, and the gearing. The frame is of solid wrought iron, with strong posts at the corners, and a rectangular opening at the top, over the saw. The saw is placed horizontally in the frame, and 10 inches below the top. The circular saw is 40 inches in diameter, and revolves on a fixed pivot in the center. In operating the machine, the carriage, which is above the saw, moves towards and from the saw alternately. At each end of the carriage is a clamp, or V-shaped piece of iron, holding the bolts of wood to be sawed. The bolts are 2 feet long and from 4 to 8 inches in diameter. The saw at each cut takes off about 1 inch from the lower end of the bolt, the pieces dropping down through an opening in the floor directly under the saw, into an elevator, by which they are carried to another room. The front side of the frame, where the operator

stands, is protected by a guard, consisting of a plank covered with iron, of sufficient width to prevent pieces of the saw, in the event of breaking, or pieces of the bolt, from flying out. The right end is also protected by a plank or board 12 inches wide, for the same purpose. The sawdust carrier incloses the left end of the frame. The back side of the frame is close to the wall of the room, where no one has occasion to go. If the saw breaks, pieces cannot escape into the room except by tearing through the protections around the frame. Plaintiff was running a single cutter about five feet to the right of the double cutter. The operator of the double cutter threw the ends of the blocks which he could not saw into a box standing between the two cutters. On the right of the plaintiff was a gang saw, whose operator also threw similar pieces into a tub standing at the right of the plaintiff's machine. The business of the plaintiff was to saw those pieces. Plaintiff had been at work in this room for nearly five years. The double cutter had been in operation for two years. It is conclusively established by the testimony on the part of both the plaintiff and the defendants that these saws frequently broke, even though they were perfectly sound. One of plaintiff's witnesses, who had operated this machine before the accident, testified that sometimes two broke in one week, and sometimes they would run three or four months without breaking. The reason for this is that the "dogs," which come up with a spring to hold the bolts in place, "do not always go up solid," as the witnesses express it, so as to hold the bolts entirely firm. Whenever this happens, the bolts bind the saw, and breaking generally results.

On November 10, 1891, the defendants, having broken the saw, and having no new one to put in, took a saw, which had a crack in it two or three inches long, to a foundry, had it riveted, and placed in the machine for

use.    It did the work without trouble until December 9,
when it broke.    Plaintiff claims that a piece of the saw
flew out, struck him in the side, and injured him.    The
sole negligence alleged is the use of an unsound saw.

The conflict of evidence was upon the following points:

1. Plaintiff's testimony tended to show that when the
saws broke pieces flew around the room.    Defendants' testi-
mony tended to show that it was impossible for pieces to
fly out, on account of the guard.

2. Plaintiff claims that he was struck by a piece of the
saw, while defendants claim that when the saw broke,
which made a great noise, the plaintiff, in stepping or
running back or to his right, fell over the tub standing
near him.

3. One witness testified that he picked up a piece of the
saw near where the plaintiff stood.    Defendants insisted
that the only way in which such piece could escape was
by dropping down under the frame, striking upon the side
of the opening to the elevator, and bounding out upon
the floor, in which case it could do no harm.    The frame
was open just above the floor, and the only way to see
the saw was by stooping down and looking up under the
table, or by standing up above the frame and looking
down upon it.

4. Plaintiff's testimony tended to show that the protec-
tion at the right end of the cutter was a board an inch
thick, while defendants' testimony showed it to be a plank
1½ to 2 inches thick.

5. There was also a conflict of evidence on the question
whether the saw was suitable and safe for use.

The case was submitted to the jury under the charge of
the court, and a verdict rendered for the defendants.

1. The defendants introduced evidence of expert wit-
nesses, who were familiar with these machines and saws,
and had had large experience in their use, and who knew
their strength and the force to which they were subjected,
to the effect that in their judgment the saw in question
was suitable and safe for use.    We think the testimony
was properly admitted.    It cannot be said that one un-
familiar with the use of such machines is as competent to

judge of their safety and fitness as those experienced and skilled in their use, and who have knowledge of their construction. .

2. The judge very fully and carefully instructed the jury upon the general principles of negligence involved in the case, and as to the duty of the employer to furnish a safe place and safe appliances, and as to the risks which the plaintiff assumed. These principles are so well established, and so familiar to the profession, that we deem it unnecessary to quote from the charge. The circuit judge closed his instructions upon the negligence of the defendants by saying:

"The question for you to determine in this case is, was this saw at the time a safe and proper saw to be used in the connection in which it was then being used? Was it such a saw as men of ordinary prudence and care and caution would have used under like circumstances?"

The verdict and judgment must stand, unless, as the plaintiff contends, the court should have directed a verdict for the plaintiff, leaving to the jury only the question of damages. It is unnecessary to discuss this question under the conflicting evidence as above stated. If the jury believed the evidence on the part of the defendants, the plaintiff was not struck by a piece of the saw. One of the plaintiff's own witnesses testified that the pieces of the saw could not escape from the table without tearing through the board or plank protection at the end. No witness on the part of the plaintiff testified that the protection was torn off or broken. Neither can it be said as a matter of law that it was negligence to use the mended saw. It had done the work for a month, and there is no evidence tending to show that it was weaker at the mended point than at any other, or that it broke at that point, or in consequence of the crack in its mended condition. Witnesses for the plaintiff testified positively

that it was not safe, and that they so notified defendants' agent. This information was denied, and defendants' witnesses as positively testified that it was safe.

Judgment affirmed.

LONG, MONTGOMERY, and HOOKER, JJ., concurred. McGRATH, C. J., did not sit.